# SONO BELLO PHYSICIAN EMPLOYMENT AGREEMENT
(Version 10/2021)

THIS PHYSICIAN EMPLOYMENT AGREEMENT (the "**Agreement**") is entered into by and between **Aesthetic Physicians, P.C.** and/or **Aesthetic Physicians of CA, Inc.** and/or **Aesthetic Physicians of CO, P.C.** and/or **Aesthetic Physicians of MA, P.C.** and/or **Aesthetic Physicians of Kansas, PA** and/or **Sono Bello Aesthetic Physicians, P.C.**, all professional corporations doing business as Sono Bello (hereinafter referred to collectively as "**Practice**"), and, **signatory Physician Employee** (hereinafter referred to as "**Employee**").

**WHEREAS**, Practice provides certain aesthetic medical services (the "Medical Services"), including, but not limited to, surgical and non-surgical procedures, pre and post surgical care, after-hours availability, and related services (further defined in the Sono Bello Physician Job Description) at various Practice locations; and

**WHEREAS**, Employee is duly qualified to practice medicine in the applicable State (the "State") with mutual agreement of parties upon a Practice location (the "Center"), and

**WHEREAS**, Employee desires to be employed by and to provide Medical Services on behalf of Practice; and Practice desires to employ Employee, each in accordance with the terms and conditions of this Agreement

**NOW, THEREFORE**, in consideration of the agreements herein, the parties agree as follows:

## ARTICLE I
## EMPLOYMENT

**Section 1.1 Recitals.** The Recitals set forth above are hereby incorporated into and made part of this Agreement.

**Section 1.2 Employment.** Subject to the terms and conditions contained in this Agreement, Practice agrees to employ Employee and Employee hereby accepts such employment upon such terms and conditions and agrees to perform the duties required of Employee under this Agreement. Any Employee reaching full-time status shall be eligible to participate in the employee benefit plans maintained by Practice. Full-time status is determined by Practice Human Resources based on days worked.

**Section 1.3 Term of Employment.** The term of this Agreement shall commence upon the date Employee first provides Medical Services for Practice (the "Effective Date") and shall continue as long as both Practice and Employee agree. The employment is "at will" and either Practice or Employee may terminate this Agreement at any time during the course of Employee's employment and for any reason. Employee agrees to provide 60-day advance notice to Practice of the intent to terminate the Agreement, in order to be eligible for the Semi-Annual Bonus detailed on **Addendum A.** Employee agrees to honor scheduled patient appointments during this 60-day notice period, unless Practice agrees in writing that Employee may terminate the employment relationship sooner. Practice agrees to provide 60-day advance notice to Employee of the intent to terminate the Agreement.

**Section 1.4 Cross Coverage.** Employee agrees to participate in cross coverage for other Practice surgeons in Center, in the event other surgeons(s) has time off, or is otherwise not available for post-operative complication or emergency care. Employee will likewise receive the same cross coverage courtesy from other Center surgeons of Practice, during time off periods or unavailable times agreed upon by Practice. If Employee maintains active hospital privileges locally, Employee agrees to admit to such hospital any Practice patient for any Center surgeon when that surgeon is not available or does not have proper admitting privileges.

**Section 1.5 Suspension and Other Discipline.** The Practice reserves the right, in lieu of termination, to instead suspend or issue other discipline to the Employee for any noted violation of Agreement. Such suspension may be without pay at the sole discretion of Practice.

**Section 1.6** <u>Time Off Requests.</u> Employee request time off, which will be paid at the base salary rate outlined on **Addendum A**. Eligible Employee is also provided with a "Vacation Pool", outlined in detail on **Addendum A.** With the exception of emergencies, the time off request should be planned at least 90 days in advance, mutually agreed upon, and is not to be unreasonably denied by Practice. The 90 days requirement is required by Practice, due to surgery and patient scheduling.

**Section 1.7** <u>Disruption of Services.</u> In the event Medical Services are disrupted at Center for any reason, Employee agrees to immediately take a temporary unpaid leave of absence until which time Practice can reestablish services.

**Section 1.8** <u>Employee's Professional Fees and Charges.</u> Except as otherwise provided in writing, or required by law, it is expressly understood and agreed that, when Employee performs Medical Services while employed by Practice, all fees and charges generated in connection with the Medical Services provided under the Agreement are the property of Practice, and where applicable, will be billed by Practice to the patient, client, or appropriate payor. The charges for all such services will be according to a schedule of fees or charges determined by Practice in its sole discretion. Collection of Employee's professional charges and other fees for Employee's services shall be the responsibility of Practice. Employee hereby assigns to Practice all of such Employee's professional charges and fees, and grants full right and authority to Practice to collect all of such Employee's professional charges and fees related to the Medical Services provided pursuant to the Agreement.

**Section 1.9** <u>Professional Liability Insurance.</u> Practice shall obtain, pay for, and maintain professional liability (malpractice) insurance covering Employee during the term of employment and for the applicable statute of limitations period for medical malpractice in the State following any termination of the Agreement for the specific purpose of protecting both the Practice and the Employee from malpractice liabilities or claims resulting from the performance of Medical Services by the Employee on behalf of the Practice for alleged acts occurring within the scope of and during the Employee's employment with Practice. Practice shall maintain minimum malpractice coverage of $1,000,000.00 (One Million Dollars) per occurrence and $3,000,000.00 (Three Million Dollars) annual aggregate to cover liabilities of both the Employee and Practice resulting from the performance of Medical Services by the Employee on behalf of Practice.

**Section 1.10** <u>Standard Compensation.</u> Employee shall receive the compensation as set forth on **Addendum A** attached to this Agreement.

**Section 1.11** <u>Arbitration.</u> Employee specifically agrees to the Arbitration addendum as set forth in **Addendum B** attached to this Agreement.

**Section 1.12** <u>Non-Solicitation and Confidentiality.</u> Employee specifically agrees to the non-solicitation and confidentiality addendum as set forth on **Addendum C** attached to this Agreement.

**Section 1.13** <u>Fellowship Covenants.</u> If applicable, Employee specifically agrees to the Fellowship Covenants as set forth on **Addendum D** attached to this Agreement.

**Section 1.14** <u>Medical Leadership.</u> If applicable, Employee specifically agrees to the duties and benefits associated with Medical Director Team (MDT) membership, as set forth in **Addendum E** attached to this agreement.

**Section 1.15** <u>Fellowship Training Compensation.</u> If applicable, Employee shall receive the compensation for Fellowship Training conducted as set forth on **Addendum F** attached to this agreement.

**Section 1.15** <u>Use of Employee Name.</u> Subject to Employee's reasonable disapproval on a case-by-case basis, Employee specifically authorizes Practice to use Employee's name and likeness in any Practice materials (written, verbal, electronic, or visual) without additional consideration other than the agreed upon compensation set forth in **Addendum A** during the term of the Agreement and for a reasonable time period after termination of the Agreement, not to exceed 120 days.

**Section 1.16 <u>Exempt Status.</u>** Employee is an "exempt" employee as defined by both the Fair Labor Standards Act and applicable State regulatory guidance and is therefore exempt from wage and hour requirements applicable to only non-exempt employees including, but not limited to, overtime and mandatory meal and rest breaks.

## ARTICLE II
## EMPLOYEE REPRESENTATIONS AND WARRANTIES

**Section 2.1 <u>Licenses.</u>** Employee represents and warrants to Practice that, as of the Effective Date and at all times during Employee's employment with Practice:

    a) Employee is duly licensed to practice medicine in the State(s); and
    b) Employee shall at all times have all necessary narcotic and controlled substance license(s) and number(s) required to perform the Medical Services hereunder.

**Section 2.2 <u>Discipline.</u>** Employee represents and warrants to Practice that, as of the Effective Date and at all times during Employee's employment with Practice, except as otherwise expressly disclosed in writing by Employee and approved by Practice:

    a) Employee's license to practice medicine in any state has never been suspended, revoked, or restricted;
    b) Employee's privileges at any hospital or other medical facility have never been suspended, revoked, or restricted;
    c) Employee has never been reprimanded, sanctioned, or disciplined by a licensing board or state or local medical society or specialty board;
    d) There has never been entered again Employee any known final judgment in a malpractice action having an aggregate award to the plaintiff in excess of $10,000.00 (Ten Thousand Dollars);
    e) No action based on an allegation of malpractice by Employee has ever been settled by payment to the plaintiff of an aggregate amount in excess of $10,000.00 (Ten Thousand Dollars);
    f) There are no known pending or threatened claims against Employee alleging any professional liability arising from Employee's medical services regardless of the employer; and
    g) Employee is not and at no time has been excluded from participation in any federally funded health care program, including Medicare and Medicaid. Employee shall immediately notify Practice of any threatened, proposed, or actual exclusion from any federally funded health care program, including Medicare and Medicaid.

Employee shall immediately notify Practice in writing of any action, change, or circumstance that shall make any such representation in subsection (a) through (g) above untrue or misleading. Immediately shall mean within 30 days of the action, change, or circumstance outlined above.

## ARTICLE III
## MISCELLANEOUS PROVISIONS

**Section 3.1 <u>Notice.</u>** Any and all notices provided for herein shall be given by hand delivery or in writing by registered or certified U.S. mail, return receipt requested, or Sono Bello company email. Employee will be provided with company email to use for employment purposes, including for use of providing notice as required under the Agreement. Notification shall be deemed delivered when personally delivered, deposited in the U.S mail in accordance with the above requirements, or acknowledged by the recipient when sent via Sono Bello email.

**If to Practice:**
**Aesthetic Physicians, P.C. et. al.**
8525 E. Pinnacle Peak Road, Suite 150
Scottsdale, AZ 85255

**If to Employee:**
327 westover ave
Norfolk
~~Virginia 23507~~

**Section 3.2 <u>Invalid Provision.</u>** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed as if such invalid or unenforceable provisions were omitted.

**Section 3.3 Assignment.** This Agreement is personal to Employee and may not be assigned by Employee. Agreement may be assigned by Practice to any entity controlled by Practice or any successor to Practice.

**Section 3.4 Survival.** The following Sections of this Agreement shall survive termination: 1.11, 1.12, and 1.13.

**Section 3.5 Entire Agreement.** This Agreement, including Addendums, represents the entire Agreement between the parties concerning the subject matter contained herein, and there are no other terms, covenants, obligations, or representations, oral or written, of any kind whatsoever. The above-named Addendums are incorporated by reference into this Agreement, and the term "Agreement" shall be deemed to include such Addendums. Any changes to these Addendums may be made by Practice, at their sole discretion, with Employee being notified of any substantive changes in writing. Practice shall deem such changes as accepted by Employee if Employee does not notify Practice of non-acceptance within 30 days of notice.

**Section 3.6 Execution.** By Employee's signature to this Agreement, Employee acknowledges that this Agreement has been prepared by Practice and its legal counsel, that Employee has read and understood this Agreement, that Employee has had an opportunity to discuss this Agreement with independent legal counsel of Employee's choosing, that its terms have been fully and fairly negotiated between Employee and Practice with such independent advice of counsel, and that Employee signs it voluntarily.

**Section 3.7 Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall be deemed to constitute one agreement. It is understood and agreed that if facsimile or other electronic transmission copies of this Agreement bearing signatures are exchanged between parties, such copies shall in all respects have the same weight, force and legal effect and shall be fully as valid, binding, and enforceable as if such signed copies ere original documents bearing original signatures.

**Section 3.8 Reimbursements.** Assigned Practice Location(s): For the purpose of this Agreement, the Assigned Practice Location(s) shall be: Norfolk VA.

Certain expenses, incurred by Employee in providing the Medical Services when traveling outside of Assigned Practice Location, may be reimbursed by Practice. These expenses include reasonable travel, milage and/or lodging expenses. Filing of designated paperwork is required for reimbursement to occur.

## EXECUTION

IN WITNESS WHEREOF, the parties hereto have executed or have caused their duly authorized officer to execute this Agreement.

Employee:

*[DocuSigned by: signature]*
Ivor Kaplan                                                 1/25/2022
Name, M.D./D.O.                                             Date

Practice:

*[DocuSigned by: Sean Gallagher]*                           1/27/2022
Sean Gallagher, VP Physician Services                       Date

*[DocuSigned by: Christopher Chung]*                        1/27/2022
Dr. Christopher Chung, Chief Medical Officer                Date
Aesthetic Physicians, P.C.

4