IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

IVOR B. KAPLAN,                          )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )        Case No. 2:23-cv-00598-EWH-RJK
                                         )
AESTHETIC PHYSICIANS, INC., *et al*.,    )
                                         )
              Defendants.                )

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Charles M. Sims, Esq. (VSB No. 35845)
C. Quinn Adams, Esq. (VSB No. 90506)
Tyler Miko, Esq. (VSB No. 97699)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
T: (804) 403-7111
F: (804) 237-0250
csims@ohaganmeyer.com
cadams@ohaganmeyer.com
tmiko@ohaganmeyer.com

*Counsel for Defendants*

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ALLEGATIONS ....................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

    A.   The Breach of Contract Claim (Count I) Fails as a Matter of Law ................................... 6

    B.   The Trade Secret Claims (Counts II and III) Fail as a Matter of Law ............................. 9

        1.   Plaintiff fails to allege that Defendants "misappropriated" the Procedure ............... 9

        2.   Plaintiff fails to allege that the Procedure qualifies as a trade secret ..................... 12

            a.   Standards for pleading a trade secret under DTSA and VUTSA .................... 12

            b.   Plaintiff fails to allege facts suggesting that the Procedure is not generally known or readily ascertainable by proper means ............................................. 13

            c.   Plaintiff fails to allege his reasonable efforts to keep the Procedure confidential.  In fact, he alleges the opposite .................................................... 15

    C.   Plaintiff's Statutory Conspiracy Claim (Count IV) Fails ................................................ 18

CONCLUSION ........................................................................................................................ 21

CERTIFICATE OF SERVICE ............................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*360 Painting LLC v. Misiph*, 3:22cv00056, 2023 U.S. Dist. LEXIS 121493
(W.D. Va. July 13, 2023) .......................................................................... 12, 13, 15

*A Society Without A Name v. Va.*, 655 F.3d 342 (4th Cir. 2011) ................................ 18

*Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818 (1981) .......................................... 8

*Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, Civil Action No. 1:21-cv-1400 (RDA/WEF),
2022 U.S. Dist. LEXIS 180811 (E.D. Va. Sep. 30, 2022) ................................... 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 5

*Atwood v. CertainTeed Corp.*, No. 1:13-cv-1006, 2014 U.S. Dist. LEXIS 29183
(E.D. Va. Mar. 5, 2014) .......................................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 5

*Bigelow Corp. v. Hounds Town USA, LLC*, No. 3:23-CV-00134-FDW-SCR,
2023 U.S. Dist. LEXIS 134352 (W.D.N.C. Aug. 2, 2023) .................................... 6, 9

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, No. SAG-22-00176,
2023 U.S. Dist. LEXIS 144241 (D. Md. Aug. 16, 2023) ..................................... 15

*Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017) ........................... 17

*Chittum v. Potter,* 219 S.E.2d 859 (Va. 1975) ......................................................... 8

*Colden v. W. Coast Life Ins. Co.*, Civil Action No. RDB-12-1691,
2013 U.S. Dist. LEXIS 37817 (D. Md. Mar. 19, 2013) ...................................... 6, 9

*Contract Assocs. v. Atalay*, No. 1:14-cv-882, 2015 U.S. Dist. LEXIS 48129
(E.D. Va. April 10, 2015) ........................................................................... 17

*Cove v. Wallen*, No. CL-2018-10390, 2020 Va. Cir. LEXIS 31 (Fairfax Cnty. Mar. 11, 2020).... 8

*DAT Sols., LLC v. Convoy*, Inc., No. 3:22-cv-00088-IM, 2023 U.S. Dist. LEXIS 70734
(D. Or. Apr. 24, 2023)........................................................................... 15, 16

*Davis v. Univ. of N.C.*, No. 1:19CV661, 2022 U.S. Dist. LEXIS 149716
(M.D.N.C. Aug. 22, 2022)........................................................................ 6, 9

*Dean v. Morris*, 756 S.E.2d 430 (2017)................................................................ 7, 8

*Dream Kitchen & Bath Shop, LLC v. Kitchen & Bath Shop, LLC*, No. 2:22-cv-184,
2023 U.S. Dist. LEXIS 173526 (E.D. Va. June 21, 2023) .................................. 18, 19

*Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175 (4th Cir. 2000) .......... 5

*Filak v. George*, 594 S.E.2d 610 (Va. 2004) ......................................................... 7

*Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004)................ 18

*Gulsen v. PNC Bank*, No. 1:12-cv-202, 2012 U.S. Dist. LEXIS 203637
(E.D. Va. July 9, 2012) ............................................................................ 7

*Gurwell v. Seaworld Parks & Entm't LLC*, No. 2:20cv312, 2021 U.S. Dist. LEXIS 176544 (E.D. Va. Aug. 11, 2021) ............................................................................................. 5

*Hampton Rds. Connector Partners v. Land to Sand Site Servs., Inc.,* No. 2:23cv174, 2023 U.S. Dist. LEXIS 222687 (E.D. Va. Oct. 17, 2023) ..................................... 10

*Harper Hardware Co. v. Powers Fasteners, Inc.*, No. 3:05CV799, 2006 U.S. Dist. LEXIS 3821 (E.D. Va. Jan. 19, 2006) ........................................... 19

*Harrison v. U.S. Post Serv.*, 840 F.2d 1149 (4th Cir. 1988) ............................................. 5

*Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668 (E.D. Va. 2007) .................................. 7

*Hoover Panel Sys. v. Hat Contract*, No. 3:17-cv-03283-C, 2021 U.S. Dist. LEXIS 239482 (N.D. Tex. Nov. 4, 2021) ............................................................................................. 17

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371 (S.D.N.Y. 2001) .......................... 6

*JTH Tax, Inc. v. Williams*, 310 F. Supp. 3d 648 (E.D. Va. 2018) ................................... 13, 15

*McKay Consulting Inc. v. Rockingham Mem. Hosp.*, 452 Fed. Appx. 331 (4th Cir. 2011) ..... 8, 14

*MHS Capital Ltd. Liab. Co. v. Goggin*, No. 2017-0449-SG, 2018 Del. Ch. LEXIS 151 (Del. Ch. May 10, 2018) ............................................................................................. 15

*MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396 (E.D. Va. 2004)................... 12, 13

*Montagna v. Holiday Inns, Inc.,* 269 S.E.2d 838 (Va. 1980) ............................................. 7

*Mullins v. Mingo Lime & Lumber Co.*, 10 S.E.2d 492 (Va. 1940) .......................................... 7

*OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 U.S. Dist. LEXIS 93652, 2019 WL 2361047 (E.D. Va. June 4, 2019) ................................................................. 9

*Persinger & Co. v. Larrowe*, 477 S.E.2d 506 (Va. 1996) ................................................. 8

*Power Home Solar, LLC v. Sigora Solar, LLC*, Civil Action No. 3:20-cv-00042, 2021 U.S. Dist. LEXIS 163753 (W.D. Va. Aug. 30, 2021)......................... 12, 13, 15

*Scharpenberg v. Carrington*, 686 F. Supp. 2d 655 (E.D. Va. 2010) .................................... 18, 19

*Senture v. Dietrich*, No. 2:08cv237, 2009 U.S. Dist. LEXIS 150089 (E.D. Va. Feb. 27, 2009).. 18

*Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36 (Va. 1995) ............................................. 7

*Steves & Sons, Inc. v. Jeld-Wen*, 988 F.3d 690 (4th Cir. 2021)........................................... 15

*Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) ...................................................... 5

*Wilburn v. Mangano*, 851 S.E.2d 474 (Va. 2020) ........................................................ 8

*Young Design, Inc. v. Teletronics Int'l, Inc.*, Civil Action No. 00-970-A, 2001 U.S. Dist. LEXIS 21851 (E.D. Va. July 31, 2001) ....................................... 13

**Statutes**

18 U.S.C. § 1839......................................................................................................... 10, 11

18 U.S.C. § 1839(3) ......................................................................................................... 12

Va. Code § 59.1-336 ................................................................................................. 10, 11, 12

Aesthetic Physicians, Inc., Aesthetic Physicians, P.C. (collectively "Aesthetic Physicians") and Body Contour Centers, LLC ("BCC") (collectively "Defendants"), by counsel, state as follows in support of their Motion to Dismiss the First Amended Complaint ("FAC") filed by Ivor B. Kaplan, M.D. ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

In response to Defendants' Motion to Dismiss his initial Complaint, Plaintiff filed an Amended Complaint including a new claim for breach of contract and essentially restating his prior trade secrets and conspiracy claims. Like his initial Complaint, the Amended Complaint is factually unsupported and legally bankrupt.

Plaintiff fails to state a breach of contract claim (Count I) because he fails to allege the existence of a valid, enforceable oral contract. Plaintiff only alleges that he was "promised payment by Aesthetic Physicians for allowing" it to use the Procedure (ECF 22, ¶ 28), but does not allege what "payment" he was promised. To establish a valid, enforceable oral contract, Plaintiff must allege facts establishing mutual assent by the parties to all of the material terms of the alleged oral contract. The price Aesthetic Physicians agreed to pay for its use of the Procedure is a material term. If that term is unknown, there can be no meeting of the minds as a matter of law. Accordingly, Plaintiff fails to state a claim for breach of contract in Count I.

Plaintiff's trade secret claims (Counts II and III) fare no better. Though Plaintiff cannot establish a valid, enforceable oral contract, his allegations about that alleged contract refute his conclusory misappropriation allegations. He alleges that he voluntarily disclosed the Procedure to Aesthetic Physicians and permitted Aesthetic Physicians to use the Procedure and teach it to its physician (which he admits it did). Accordingly, by Plaintiff's own allegations, Aesthetic

1

Physicians did not use improper means to obtain the Procedure, did not improperly disclosure the procedure, and did not exceed the scope of the authorized use.

Plaintiff's trade secret claims also fail because he fails to allege facts establishing that the Procedure is not readily ascertainable to other physicians employed in the same line of business, or that he took reasonable efforts to keep the Procedure a secret. As discussed more below, the facts in the FAC suggest the opposite.

Finally, Plaintiff's statutory conspiracy claim (Count IV) fails because it is based on legal conclusions. He does not offer any facts suggesting a meeting of the minds between the alleged conspirators. In fact, his allegations concerning BCC's role are so scant that he fails to show that BCC participated in any of the conduct underlying the alleged conspiracy. Accordingly, he fails to plead the formation or execution of a viable statutory conspiracy.

In light of Plaintiff's repeated inability to assert viable claims against Defendants, this Court should dismiss the claims in the FAC with prejudice.

## ALLEGATIONS

Aesthetic Physicians does business under the fictious name of Sono Bello and provides outpatient cosmetic surgical remedies. (ECF 22, ¶¶ 2, 5, 7). BCC has a Management and Services Agreement ("MSA") with Aesthetic Physicians. (*Id.*, ¶ 10). Per the MSA, Aesthetic Physicians provides all professional medical services and staff as Sono Bello and runs the medical practice in each Sono Bello location. (*Id.*, ¶¶ 11–13). Aesthetic Physicians is also responsible for training and managing the medical staff "on both the procedures available and any updates or modifications to those procedures." (*Id.*, ¶ 13).

Meanwhile, Plaintiff alleges that BCC "provides all nonprofessional services including management, administration, facilities, support services, and marketing" and "provides all of the

control over marketing, public dissemination of information including about the services rendered by any Sono Bello location." (*Id*., ¶ 12). He claims that BCC also "owns all rights in any intellectual property related to the Sono Bello operations, including the rights to the name 'Sono Bello' . . . [and] all digital media relating to Sono Bello." (*Id*., ¶ 14).

Plaintiff alleges that he is a board-certified plastic and reconstructive surgeon. (*Id*., at ¶ 17). He began working at the Norfolk Sono Bello clinic in early 2020, but was furloughed at the outbreak of COVID-19. (*Id*., ¶ 18). When Sono Bello resumed operations, Plaintiff signed the Sono Bello Physician Employment Agreement ("Employment Agreement") on April 30, 2020. (*Id*., ¶ 19; ECF 22-1). Plaintiff then worked at the Norfolk Sono Bello clinic from April 2020 until he resigned in June 2023. (ECF 22, ¶¶ 18, 37).

Plaintiff performed several procedures as part of his duties, including laser-liposuction (TriSculpt) and lower abdominal limited skin removal (TriSculpt EX). (*Id*., ¶ 21). TriSculpt EX is an "add on" procedure employed following a laser liposuction to remove loose skin. (*Id*.). If a patient had too much loose skin to be removed via TriSculpt EX, the patient would be referred to a plastic surgeon to undergo abdominoplasty under general anesthesia (neither of which was offered by Sono Bello). (*Id*.). Plaintiff claims that, while working at the Norfolk Sono Bello clinic, he "conceived of and developed an improved procedure whereby liposuction as then-performed by Sono Bello surgeons was coupled with additional surgical interventions to correct for skin expansion/stretching due to weight gain in a single procedure and performed under local anesthetic rather than general anesthetic." (*Id*., ¶ 22). This "improved procedure" could be "performed within the existing parameters of Local Anesthesia as practiced at Sono Bello, rather than General Anesthesia." (*Id*., ¶ 23).

Sometime in 2020, Plaintiff began performing the Procedure on some patients. (*Id.*, ¶ 24). On some unspecified date "[l]ater in 2020," Plaintiff demonstrated the procedure for two doctors: Dr. Christpher Chung, M.D., and Dr. Robert F. Centeno, M.D.. (*Id.*, ¶ 25)*. Dr. Chung is Aesthetic Physicians' Chief Medical Officer. (*Id.*). However, when Plaintiff demonstrated the Procedure, Dr. Centeno was neither employed by, nor affiliated with, Aesthetic Physicians. (*Id.*).[1] Nothing in the FAC suggests that Dr. Centeno (an outsider to Sono Bello) or Dr. Chung made any promises to Plaintiff to keep the Procedure confidential. Dr. Chung agreed that the Procedure would be subject to a pilot study at the Norfolk Sono Bello, to be performed by Plaintiff and Dr. Centeno to "1) determine the safety and feasibility of the Procedure and (2) determine the financial viability for Sono Bello." (*Id.*, ¶ 26).

Plaintiff claims that he "kept the information relating to the Procedure confidential within Aesthetic Physicians[.]" (*Id.*, ¶ 28). He claims that he "was promised payment by Aesthetic Physicians for allowing Aesthetic Physicians to use the Procedure and teach it to other employees subject to the confidentiality terms of its employment agreements with them." (*Id.*, ¶ 28).

By mid-2021, Sono Bello began teaching the Procedure to its physicians and began offering the Procedure "to the consuming public" at over 80 locations across the United States. (*Id.*, at ¶¶ 29–32). It also began advertising the Procedure in October 2021, and filed for U.S. federal trademark protection for "AbEX" that same month. (*Id.*, at ¶ 29). Aesthetic Physicians has only advertised the Procedure in "general terms" and has otherwise purportedly kept the Procedure "confidential and proprietary under the terms of . . . its Non-Solicitation &

---

[1] Plaintiff claims that Dr. Centeno was "joining Sono Bello." (*Id.*, ¶ 25). But he offers no facts suggesting that Dr. Centeno had any present plans to join Sono Bello when Plaintiff demonstrated the Procedure to him. While Plaintiff alleges that Dr. Centeno is *now* Sono Bello's Regional Medical Director, he does not allege when Dr. Centeno joined Sono Bello.

Confidentiality terms in Addendum C to its Employment Agreement." (*Id*., ¶ 33; ECF 22-2 (including Addendum C to Plaintiff's Employment Agreement with Plaintiff's signature).

Plaintiff claims that Sono Bello failed to pay him for its use of the Procedure. (*Id*., ¶ 30). He claims that he demanded payment from Sono Bello, but was denied on the grounds that the Procedure "had been performed for decades and was well known." (*Id*., ¶ 35). He alleges that "Sono Bello fabricated reasons" to terminate his employment and left him with no option but to resign, which he did in June 2023. (*Id*., ¶ 37).

## LEGAL STANDARD

"[D]ismissal is appropriate" under Federal Rule 12(b)(6), "if it appears that the plaintiff is not 'entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Gurwell v. Seaworld Parks & Entm't LLC*, No. 2:20cv312, 2021 U.S. Dist. LEXIS 176544, at *8 (E.D. Va. Aug. 11, 2021) (quoting *Harrison v. U.S. Post Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, the "complaint must contain sufficient factual allegations that, taken as true, 'raise a right to relief above the speculative level' and 'across the line from conceivable to plausible.'" *Id*. (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action ... [or] naked assertions devoid of further factual enhancement" will not suffice. *Id*. (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court need "not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted).

Additionally, Federal Rule 8 prohibits "internally conflicting factual assertions" in a pleading. *See Colden v. W. Coast Life Ins. Co.*, Civil Action No. RDB-12-1691, 2013 U.S. Dist. LEXIS 37817, at *13 (D. Md. Mar. 19, 2013) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 406 (S.D.N.Y. 2001)). A Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself[.]" *Bigelow Corp. v. Hounds Town USA, LLC*, No. 3:23-CV-00134-FDW-SCR, 2023 U.S. Dist. LEXIS 134352, at *14 n.8 (W.D.N.C. Aug. 2, 2023) (citation omitted). Instead, "[t]hose inconsistencies defeat a reasonable inference in the plaintiff's favor." *Davis v. Univ. of N.C.*, No. 1:19CV661, 2022 U.S. Dist. LEXIS 149716, at *20 (M.D.N.C. Aug. 22, 2022) (citations omitted).

## ARGUMENT

### A.    The Breach of Contract Claim (Count I) Fails as a Matter of Law.

Plaintiff alleges that he "was promised payment by Aesthetic Physicians for allowing Aesthetic Physicians to use the Procedure and teach it to its other employees subject to the confidentiality terms of its employment agreements with them." (ECF 22, ¶ 28). However, in Count I, Plaintiff alleges that he and "Sono Bello[2] entered into an agreement whereby Sono Bello could use the Procedure developed by [Plaintiff] as a service offered to the public and in return would pay [Plaintiff] for its use of the procedure." (ECF 22, ¶ 42). Plaintiff falls woefully short of alleging an enforceable contract with Defendants.

---

[2] Plaintiff refers to both Aesthetic Physicians and Body Contour Centers collectively in the FAC as "Sono Bello." (*See generally* ECF 22). To the extent that Plaintiff is asserting Count I against BCC, that claim fails because he does not allege a single fact regarding the essential elements of any contract between him and BCC. He alleges that he was "promised payment ***by Aesthetic Physicians*** for allowing ***Aesthetic Physicians*** to use the Procedure and teach it" to its employees. (ECF 22, ¶ 28) (emphasis added). He offers no facts regarding promises or other consideration exchanged between him and BCC.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation of that obligation; and (3) injury or damage to the plaintiff caused by the breach of the obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Thus, "[t]he first element of a cause of action for breach of contract requires the plaintiff to establish the existence of a valid contract." *Gulsen v. PNC Bank*, No. 1:12-cv-202, 2012 U.S. Dist. LEXIS 203637, *18 (E.D. Va. July 9, 2012) (citing *Montagna v. Holiday Inns, Inc.,* 269 S.E.2d 838, 844 (Va. 1980)).[3]

To establish a valid contract, Plaintiff must allege facts establishing "a complete agreement which requires acceptance of an offer, as well as valuable consideration." *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980). The contract must encompass the elements of "completeness," which "denotes that the contract embraces all material terms," and that of "certainty," which denotes "that each of those terms is expressed in a sufficiently exact and definite manner." *Dean v. Morris*, 756 S.E.2d 430, 433 (2017) (quoting *Mullins v. Mingo Lime & Lumber Co.*, 10 S.E.2d 492, 494 (Va. 1940)). "An incomplete contract, therefore, is one from which one or more material terms have been entirely omitted." *Id.* (quoting *Mullins*, 10 S.E. at 494).

Not only must the alleged oral contract embrace all material terms, but the Plaintiff must allege facts establishing "'a showing of mutual assent at the time of the agreement, *i.e.,* the proverbial 'meeting of the minds.'" *Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668, 676 (E.D. Va. 2007) (quoting *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995)). "Until the parties have a distinct intention common to both and without doubt or difference, there

---

[3] Plaintiff must prove his oral contract by clear and convincing evidence. *Dean v. Morris*, 756 S.E.2d 430, 433 (Va. 2014); *Fred C. Walker Agency, Inc. v. Lucas*, 211 S.E.2d 88, 92 (Va. 1975).

is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996). "[T]here must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (1981). These requirements apply to written and oral contracts. *See Dean*, 756 S.E.2d at 432.

"Without question, compensation is an essential contract term." *McKay Consulting Inc. v. Rockingham Mem. Hosp.*, 452 Fed. Appx. 331, 337 (4th Cir. 2011) (citing *Chittum v. Potter*, 219 S.E.2d 859, 864–64 (Va. 1975)); *see also Wilburn v. Mangano*, 851 S.E.2d 474, 476 (Va. 2020); *Allen*, 281 S.E.2d at 820 (settlement agreement lacked mutual assent because there was "[n]o sum specified in the agreement" or "any method or formula . . . for determining the amount payable in settlement"); *Cove v. Wallen*, No. CL-2018-10390, 2020 Va. Cir. LEXIS 31, at *20 (Fairfax Cnty. Mar. 11, 2020) ("[T]he fundamental problem" was that the alleged oral agreement "was incomplete as to a material term—the specific amount to be repaid by the Wallens to the Coves."). Thus, "[a]s a matter of law there can be no meeting of the minds between the parties as to an essential term when the term is unknown." *McKay Consulting Inc.*, 452 Fed. Appx. at 337; Such is the case here.

Plaintiff fails to allege facts establishing a material term of the alleged oral contract between him and Aesthetic Physicians: the specific amount Aesthetic Physicians agreed to pay Plaintiff to use the Procedure. Plaintiff also fails to allege facts establishing when Aesthetic Physicians agreed to make these payments; the terms under which it agreed to make the payments; or facts suggesting that the parties mutually agreed to such terms. Accordingly, the alleged oral contract is unenforceable and this Court should dismiss Count I with prejudice.

**B.** **The Trade Secret Claims (Counts II and III) Fail as a Matter of Law.**

"[T]he applicable standards under the DTSA and . . . the VUTSA are nearly identical." *Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, Civil Action No. 1:21-cv-1400 (RDA/WEF), 2022 U.S. Dist. LEXIS 180811, at *13 (E.D. Va. Sep. 30, 2022) (quoting *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 U.S. Dist. LEXIS 93652, 2019 WL 2361047, at *2 (E.D. Va. June 4, 2019)). Therefore, Defendants address Counts II and III together. Both fail for the reasons discussed below.

**1.** **Plaintiff fails to allege that Defendants "misappropriated" the Procedure.**

Plaintiff claims that he "was promised payment by Aesthetic Physicians for allowing Aesthetic Physicians to **use the Procedure** and **teach it to other employees** subject to the confidentiality terms of its employment agreements with them." (ECF 22, ¶ 28) (emphasis added).[4] In short, he alleges that he authorized Aesthetic Physicians to use and teach the Procedure to its physicians in exchange for an alleged promise to pay him an unspecified sum at an unspecified time. He alleges that Aesthetic Physicians marketed and advertised the Procedure, taught it to its physicians, and perform it at the 80 Sono Bello locations nationwide. (ECF 22, ¶¶ 29–31).

Plaintiff *does not* allege that he has revoked the alleged authorization. He also *does not* allege that Aesthetic Physicians exceeded the scope of the authorized use for the Procedure.

---

[4] Elsewhere, Plaintiff claims that "Aesthetic Physicians has no rights to the Procedure, whether to teach or perform it, and Dr. Kaplan has never given Aesthetic Physicians any right to do so." (ECF ¶ 32; *id*. ¶ 30 (making a similar claim that Plaintiff did not give "Sono Bello any rights in the Procedure")). This directly contradicts Plaintiff's allegation in Paragraph 28. More importantly, if true, this allegation would remove any consideration for Aesthetic Physician's promise to pay Plaintiff and eviscerate his contract claim. Therefore, the Court should afford the allegations in Paragraph 30 and 32 no weight. *See e.g.*, *Colden*, 2013 U.S. Dist. LEXIS 37817, at *13 (discussed *supra*); *Bigelow Corp.*, 2023 U.S. Dist. LEXIS 134352, at *14 n.8 (discussed *supra*); *Davis*, 2022 U.S. Dist. LEXIS 149716, at *20 (discussed *supra*).

Quite the opposite, he asserts that Aesthetic Physicians has maintained the Procedure in confidence and has not disclosed it to third parties. (*Id.*, ¶¶ 33–34).

Thus, Plaintiff's grievance is not with how Aesthetic Physicians acquired, disclosed, or used the Procedure. His complaint is that Aesthetic Physicians *failed to pay* him for doing so. (*Id.*, ¶ 31). Though the alleged oral contract with Aesthetic Physicians is unenforceable, Plaintiff's allegations establish that he voluntarily disclosed the Procedure to Defendants, with the understanding that Defendants would keep the Procedure confidential under the terms of their employment contracts with other physicians. He acknowledges that Defendants did so. (*Id.*, ¶¶ 33–34). Therefore, by Plaintiff's own allegations, Defendants have not "misappropriated" the Procedure.

DTSA and VUTSA define two categories of "misappropriation": (1) improper *acquisition* of the alleged trade secret; and (2) improper *disclosure or use* of the alleged trade secret. *See* 18 U.S.C. § 1839; Va. Code § 59.1-336. "While phrased differently, these standards are similar in effect: Defendants must have 'acquired,' 'disclosed,' or 'used' a trade secret, through 'improper means.'" *Hampton Rds. Connector Partners v. Land to Sand Site Servs., Inc.,* No. 2:23cv174, 2023 U.S. Dist. LEXIS 222687, at *28 (E.D. Va. Oct. 17, 2023) (citation and internal quotation marks omitted). The DTSA defines "improper means" to "include 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means' but does not include reverse engineering, independent derivation, or any other lawful means of acquisition.'" *Apex Advanced Tech. LLC,* 2022 U.S. Dist. LEXIS 180811, at *16–17 (citation and internal quotation marks omitted). "The VUTSA's definitions largely track those of [the DTSA]." *Id.* at 17 (citing Va. Code § 59.1-336).

Plaintiff fails to allege that Defendants **acquired** his alleged trade secret through improper means. He does not allege that Defendants obtained knowledge of the Procedure through a misrepresentation, theft, or other illegal or improper means. Instead, he alleges that he voluntarily provided the Procedure to Aesthetic Physicians pursuant to the alleged oral agreement. While that agreement is unenforceable, that does not negate the fact that Plaintiff authorized Defendants to use his alleged trade secret. Plaintiff also fails to allege facts establishing that Aesthetic Physicians improperly **disclosed** the Procedure. He asserts that Aesthetic Physicians only taught the Procedure to employees bound by its confidentiality agreements and did not disclose it to third parties. (ECF 22, ¶¶ 33–34).

Since Aesthetic Physicians *properly acquired* the Procedure and has *not improperly disclosed* it, Plaintiff must show that Aesthetic Physicians *improperly used* the Procedure. He fails to do so.

A defendant's **use** of a trade secret is improper if the defendant, "knew or had reason to know that the knowledge of the trade secret was: (i) derived from or through a person who had used improper means to acquire the trade secret; (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839; *see also* Va. Code § 59.1-336 (applying nearly identical factors). Since Plaintiff alleges that he developed the Procedure and provided it to Aesthetic Physicians via an alleged oral contract, items (1) and (3) above do not apply. Item (2) does not either.

Plaintiff alleges that one of the conditions of the alleged contract was that Aesthetic Physicians could use the procedure and teach it to other employees subject to the confidentiality

terms of its employment agreements with them." (ECF 22, ¶ 28). But, he acknowledges that Aesthetic Physicians adhered to this requirement. (*Id.*, ¶¶ 33–34). Finally, because Plaintiff alleges nothing else about the terms of the supposed contract with Aesthetic Physicians, he cannot point to any requirements for Aesthetic Physicians to limit its use of the Procedure. Thus, he fails to satisfy the final possible avenue for establishing misappropriation.

**2.** **Plaintiff fails to allege that the Procedure qualifies as a trade secret.**

Plaintiff's trade secret claims also fail because he fails to plead facts showing that the Procedure can qualify as a trade secret.

**a.** **Standards for pleading a trade secret under the DTSA and VUTSA.**

A trade secret is information that (1) has independent economic value derived from not being generally known; (2) is not known or readily ascertainable by proper means; and (3) was subject to reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839(3) (DTSA); Va. Code § 59.1-336 (VUTSA). Plaintiff must describe "with requisite specificity, the information constituting trade secrets." *Power Home Solar, LLC v. Sigora Solar, LLC*, Civil Action No. 3:20-cv-00042, 2021 U.S. Dist. LEXIS 163753, at *25 (W.D. Va. Aug. 30, 2021). He must also "provide specific factual detail about the unique nature of [the trade secret] materials, including how they were developed and why the . . . information is not otherwise readily ascertainable by their competitors in the relevant market." *Id.* at *26–27; *360 Painting LLC v. Misiph*, 3:22cv00056, 2023 U.S. Dist. LEXIS 121493, at *19 (W.D. Va. July 13, 2023).

Information is not a trade secret, if it is "generally known within the relevant industry[.]" *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D. Va. 2004). Additionally, "[w]hatever trade secrets rights might have existed at one time 'do not survive when otherwise protected information is disclosed to others, such as customers, or the general

public, who are under no obligation to protect [their] confidentiality.'" *Young Design, Inc. v. Teletronics Int'l, Inc.*, Civil Action No. 00-970-A, 2001 U.S. Dist. LEXIS 21851, at *18-19 (E.D. Va. July 31, 2001) (citation and internal quotation marks omitted). Thus, "trade secrets also do not survive when the alleged owner fails to take reasonable precautions to keep the information secret." *Id.* (citation omitted). "Restricting access to information [and] implementing confidentiality agreements . . . are all reasonable efforts." *MicroStrategy, Inc.*, 331 F. Supp. 2d at 416.

Conclusory recitations of the statutory elements will not do. *See e.g.*, *JTH Tax, Inc. v. Williams*, 310 F. Supp. 3d 648, 656 (E.D. Va. 2018) (rejecting a VUTSA claim where the plaintiff "alleged no facts to show" that its alleged trade secrets had "independent economic value" from "not being generally known or readily ascertainable by proper means."); *360 Painting LLC*, 2023 U.S. Dist. LEXIS 121493 at *19 (same); *Power Home Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, at *26–27 (same). To summarize, dismissal is appropriate if the "complaint contains conclusions, not facts" about the alleged trade secrets. *360 Painting LLC*, 2023 U.S. Dist. LEXIS 121493 at *19; *Power Home Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, at *26–27.

### b.     Plaintiff fails to allege facts suggesting that the Procedure is not generally known or readily ascertainable by proper means.

As described in the FAC, the Procedure combines common medical procedures: (i) liposuction; (ii) unspecified "additional surgical interventions"; and (iii) local anesthesia. (ECF 22, ¶ 22). Plaintiff admits that the liposuction and local anesthesia are performed in the same way as Sono Bello has always performed them. (*Id.*, ¶¶ 22–23). He offers nothing suggesting that the "additional surgical interventions" are a secret. He describes them as procedures "removing very extensive swaths of redundant skin, tightening both the lower an upper abdominal skin . . . [and]

moving the umbilicus to a new more cosmetically pleasing position." (*Id.*, ¶ 23). In short, Plaintiff offers no facts to suggest that any portion of the Procedure is not generally known in the industry or readily ascertainable by proper means.

The case of *McKay Consulting, Inc. v. Rockingham Memorial Hospital* is instructive here. The plaintiff (McKay) brought several claims against the defendant (Rockingham), including misappropriation of trade secrets under VUTSA. McKay claimed that it its trade secret was "an idea to increase reimbursements for certain hospitals." 665 F. Supp. 2d 626, 628 (W.D. Va. 2009). It provided the idea to Rockingham in a document, which Rockingham allegedly misappropriated. *Id.* at 628–29. The Court held that McKay's idea was not a trade secret and granted Rockingham's Motion to Dismiss, because McKay developed the alleged trade secret through its analysis of publicly-available statutes and regulations governing hospitals like Rockingham. *Id.* at 635. The Court explained that "[s]uch information was readily ascertainable by proper means—namely, by reference to widely known and published laws and regulations of the United States—and as such was 'generally known' to other persons who could obtain economic value from its disclosure or use—namely, other consulting groups like McKay or hospitals like RMH." *Id.*

The same is true of the Procedure. As described in Plaintiff's FAC, every component of the Procedure is a generally known medical procedure. Plaintiff does not allege any facts to suggest otherwise. Instead, he asserts that he was the first person to combine the procedures in a way that was "new to both Sono Bello and the plastic surgery field[.]" (ECF 22, ¶ 23).

A combination of publicly-available information can be a trade secret if "the unified process, design, and operation of [them], in unique combination, affords a competitive advantage and is a protectable secret." *Steves & Sons, Inc. v. Jeld-Wen*, 988 F.3d 690, 708 n.7 (4th Cir.

2021) (citation and internal quotation marks omitted). But Plaintiff offers no facts to establish that he combined the common methods comprising the Procedure in such a way that they are not readily ascertainable by other physicians or "competitors in the relevant market." *360 Painting LLC*, 2023 U.S. Dist. LEXIS 121493 at \*19; *Power Home Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, at \*26–27. He simply offers his factually unsupported conclusions that the Procedure is not "generally known to the medical community" and "not readily ascertainable by others through proper means." (ECF 22, ¶¶ 23, 34, 46, 51, 56). These bare conclusory allegations are insufficient to sustain his trade secret claims as a matter of law. *See e.g.*, *JTH Tax, Inc.*, 310 F. Supp. 3d at 656; *360 Painting LLC*, 2023 U.S. Dist. LEXIS 121493 at \*19–21; *Power Home Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, at \*26–27.

**c.**      <u>**Plaintiff fails to allege his reasonable efforts to keep the Procedure confidential. In fact, he alleges the opposite.**</u>

Plaintiff also fails to allege that he took reasonable efforts to keep the Procedure confidential. He merely alleges that he "kept the information relating to the Procedure confidential within Aesthetic Physicians." (ECF 22, ¶ 28). This fact-free, conclusory allegation cannot support Plaintiff's claim. *See Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, No. SAG-22-00176, 2023 U.S. Dist. LEXIS 144241, at \*8 (D. Md. Aug. 16, 2023) (granting a motion to dismiss a DTSA claim where the party alleged "no facts suggesting that [it] undertook reasonable efforts to maintain" the secrecy of the alleged trade secrets); *see also MHS Capital Ltd. Liab. Co. v. Goggin*, No. 2017-0449-SG, 2018 Del. Ch. LEXIS 151, at \*38 (Del. Ch. May 10, 2018) (granting a motion to dismiss a claim under the Delaware trade secrets statute where the plaintiff pled "[n]o facts" about its "reasonable efforts to maintain secrecy."). In fact, the allegations in the FAC establish that Plaintiff *did not* undertake reasonable efforts to keep the Procedure a secret.

First, there is Plaintiff's "demonstrat[ion]" of the Procedure to Dr. Centeno and Dr. Chung at some unspecified date in 2020. (ECF 22, ¶ 25). At that time, Dr. Centeno was not an employee of, or affiliated with, Aesthetic Physicians. Given this disclosure, it is incumbent upon Plaintiff to show that he took steps to ensure that Dr. Centeno would keep the information he learned confidential. He doesn't even try.

Plaintiff does not allege that he took *any* efforts to ensure that Dr. Centeno would maintain the Procedure in confidence, such as having Dr. Centeno sign a confidentiality agreement. He does not even allege that there was an implication that Dr. Centeno would keep the Procedure in confidence. The FAC lacks any facts establishing that Dr. Centeno had any duty to keep the Procedure in confidence when Plaintiff demonstrated it to him in 2020.

Nor is there any allegation establishing that Dr. Chung or Aesthetic Physicians had any duty to keep the Procedure confidential following the demonstration. (ECF 22, ¶ 22). Plaintiff does not allege that Dr. Chung or Aesthetic Physicians signed any agreement to keep the Procedure confidential or that there was any implication that they would. Instead, he states that Dr. Chung agreed to make the Procedure the subject of a pilot study at the Norfolk Sono Bello. (*Id.*, ¶ 26).

Where the owner of an alleged trade secret voluntarily discloses that information to a third party without first securing that party's promise to keep the information secret, he has not employed reasonable efforts to keep that information a secret. *See e.g.*, *DAT Sols., LLC v. Convoy*, Inc., No. 3:22-cv-00088-IM, 2023 U.S. Dist. LEXIS 70734, at *14 (D. Or. Apr. 24, 2023) (granting a motion to dismiss trade secret claims where the plaintiff admittedly disclosed "its proprietary information to customers without alleging that such customers are under an obligation to protect the confidentiality of the information[.]"); *Atwood v. CertainTeed Corp.*,

No. 1:13-cv-1006, 2014 U.S. Dist. LEXIS 29183, at *6 (E.D. Va. Mar. 5, 2014) (holding that the plaintiff waived trade secret protections by disclosing its alleged trade secret to a third party without securing any promise of confidentiality); *Contract Assocs. v. Atalay*, No. 1:14-cv-882, 2015 U.S. Dist. LEXIS 48129, at * 15-16 (E.D. Va. April 10, 2015) (same); *Hoover Panel Sys. v. Hat Contract*, No. 3:17-cv-03283-C, 2021 U.S. Dist. LEXIS 239482, at *29 (N.D. Tex. Nov. 4, 2021) (same); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 517 (S.D.N.Y. 2017) (stating the plaintiff was unlikely to show it used "reasonable efforts" to keep its information a secret where it "regularly disclosed" them to its customers "without notifying them of the information's confidential nature or binding them to confidentiality agreements[.]"). That is exactly what Plaintiff did here by demonstrating the Procedure—which he claims belonged solely to him—to Dr. Centeno and Dr. Chung without securing their promise to keep the Procedure confidential.

Second, Plaintiff alleges that he allowed Aesthetic Physicians "to use the Procedure and teach it to other employees ***subject to the confidentiality terms of its employment agreements with them***[.]" (ECF 22, ¶ 28 (emphasis added)). Plaintiff does not allege that the Aesthetic Physicians agreed to modify the terms of its Non-Solicitation & Confidentiality Addendum C to its employment contracts (the "Confidentiality Agreement"), a signed copy of which Plaintiff attaches to the FAC. (ECF 22-2). That Confidentiality Agreement gives Aesthetic Physicians the right to provide its departing physicians with "written authorization" to continue performing the Procedure after they leave Aesthetic Physicians. (*See* ECF 22-2, at pp. 2–3). Thus, by allegedly making the use of the Procedure "subject" to the Confidentiality Agreement, Plaintiff relinquished his right to require that Aesthetic Physicians treat the Procedure as a trade secret.

Accordingly, as a matter of law, Plaintiff failed to take reasonable steps to protect the confidentiality of his alleged trade secret by: (1) disclosing the Procedure to third-parties without

taking reasonable steps to maintain the confidentiality of Procedure; and (2) allegedly making Aesthetic Physicians' use of the Procedure subject to the Confidentiality Agreement, thereby giving Aesthetic Physician's sole discretion to reveal the Procedure to third parties without any protections by authorizing its departing doctors to use the Procedure.

## C.     <u>Plaintiff's Statutory Conspiracy Claim (Count IV) Fails.</u>

The elements of a statutory business conspiracy claim are: (1) concerted action; (2) legal malice; and (3) causally-related injury. *Senture v. Dietrich*, No. 2:08-cv-237, 2009 U.S. Dist. LEXIS 150089, at \*24 (E.D. Va. Feb. 27, 2009) (citation omitted). "In addition to *Iqbal's* plausibility requirement, 'business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" *Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 661 (E.D. Va. 2010) (quoting *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citation omitted)). A plaintiff "may not merely allege that two or more parties entered into a malicious agreement to harm the plaintiff's interest" but "must plead the existence of specific facts to support the notion that the parties entered into an agreement for the purpose of injuring the plaintiff in its business." *Senture*, 2009 U.S. Dist. LEXIS 150089, at \*24.

"[T]he factual allegations must plausibly suggest agreement" between the conspirators, "rather than being merely consistent with agreement." *Dream Kitchen & Bath Shop, LLC v. Kitchen & Bath Shop, LLC*, No. 2:22-cv-184, 2023 U.S. Dist. LEXIS 173526, at \*16 (E.D. Va. June 21, 2023) (quoting *A Society Without A Name v. Va.*, 655 F.3d 342, 346 (4th Cir. 2011) (other citation omitted). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* (quoting *A Society Without A Name*, 655 F.3d at 346). The plaintiff must allege "sufficient facts from which to infer a meeting of the minds" between the conspirators.

*Scharpenberg*, 686 F. Supp. 2d at 662 (citation omitted). Without any allegation as to 'specific communications' between the alleged conspirators or 'the manner in which such communications were made,'" the plaintiff "fails to plead an essential element of conspiracy." *Dream Kitchen & Bath* Shop, 2023 U.S. Dist. LEXIS 173526, at *17. Where the plaintiff fails to allege a "factual basis to discern the method of the alleged conspiracy or how it was carried out" the plaintiff "has failed to state a claim for business conspiracy under Virginia Code §§ 18.2-499 and -500." *Harper Hardware Co. v. Powers Fasteners, Inc.*, No. 3:05CV799, 2006 U.S. Dist. LEXIS 3821, at *15 (E.D. Va. Jan. 19, 2006).

Plaintiff fails to allege any facts demonstrating that there was a meeting of the minds between the Defendants and a mutual agreement on the aims of the alleged conspiracy. He alleges, in conclusory fashion, that Defendants "combined together and mutually undertook an agreement and actions to willfully and maliciously injure [Plaintiff] in his business and trade and, more specifically, to unlawfully acquire trade secret information and related intellectual property belonging to [Plaintiff] . . . and to deprive [Plaintiff] of the value of his trade secret and intellectual property rights." (ECF 22, ¶ 55). He adds, in equally conclusory fashion, that Defendants "combined together and mutually undertook an agreement and actions" to breach the alleged oral contract between Aesthetic Physicians and Plaintiff. (*Id.*, ¶ 56). These are bare legal conclusions. Plaintiff does not offer any facts leading to an inference that there was a meeting of the minds between Defendants concerning these goals. This is fatal to his claim in Count IV.

Additionally, Plaintiff fails to allege facts showing that BCC participated in the supposed acts underlying the conspiracy. His factual allegations about BCC are scant. He alleges that BCC worked with Aesthetic Physicians to "offer [the Procedure] to the consuming public" and that a

mark was registered for the Procedure in BCC's name. (*Id.*, ¶ 29).[5] However, Plaintiff admits that he provided the Procedure to Aesthetic Physicians pursuant to an oral contract. (*Id.*, ¶ 28). Aside from a conclusory allegation (*id.*, ¶ 56), Plaintiff offers no facts to suggest that BCC conspired with Aesthetic Physicians to breach that (unenforceable) agreement.

Finally, Plaintiff claims that BCC conspired with Aesthetic Physicians to "force [Plaintiff] to resign without good cause other than Sono Bello's greed and desire to protect itself from having unlawfully obtained and used [the Procedure] for commercial purposes[.]" (*Id.*, ¶ 38). But he does not allege any facts suggesting that BCC had any role whatsoever in Plaintiff's employment. In fact, the facts revealed in the FAC and its exhibits suggest the opposite.

Plaintiff alleges that Aesthetic Physicians "runs the medical practice" at Sono Bello's locations. (ECF 22, ¶ 12). It often sets up a "separate corporate structure . . . for each of the facilities' medical practice[s]" and that "all of the medical staff including surgeons [are] contracted directly with Aesthetic Physicians." (*Id.*). Plaintiff's own employment contract with Aesthetic Physicians (and affiliated entities) confirms this. (ECF 22-1, at p. 1). The contract gave Aesthetic Physicians the ability to manage, suspend, or terminate Plaintiff's employment, and bound Plaintiff to certain restrictive covenants and confidentiality promises to Aesthetic Physicians. (*see generally* ECF 22-1; ECF 22-2). The contract does not mention BCC at all, let alone give BCC any right to control or manage Plaintiff's employment. Plaintiff offers no facts in the Amended Complaint suggesting that BCC did so.

Because plaintiff's allegations are completely conclusory, Count IV fails as a matter of law and should be dismissed with prejudice.

---

[5] Plaintiff only mentions this trademark registration for the "AbEx" mark in one paragraph of the Amended Complaint. (ECF 22, ¶ 28). While he makes vague references to his "intellectual property rights" (*id.*, ¶ 56), he does not allege any facts suggesting that he is entitled to any common law or statutory rights in the AbEx Mark.

## **CONCLUSION**

Defendants respectfully request that this Court grant Defendants' Motion to Dismiss Counts I through IV of the Amended Complaint and dismiss those claims with prejudice.


May 21, 2024                              Respectfully submitted:

By: */s/ Charles M. Sims*
Charles M. Sims, Esq. (VSB No. 35845)
C. Quinn Adams, Esq. (VSB No. 90506)
Tyler Miko, Esq. (VSB No. 97699)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
T: (804) 403-7111
F: (804) 237-0250
csims@ohaganmeyer.com
cadams@ohaganmeyer.com
tmiko@ohaganmeyer.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of May, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

/s/ Charles M. Sims
Charles M. Sims, Esq. (VSB No. 35845)